2001 SD 102

Kelli HAGEMANN, as Special Adminis-
tratrix of the Estate of Chad Hagem-
ann, deceased, and Jason Sims, Plain-
tiffs,

v.

NJS ENGINEERING, INC., Defendant,

and

Lawrence County, a political subdivi-
sion of the state of South Dakota,
the Lawrence County Highway De-
partment, and Charles Williams,
Lawrence County Highway Superin-
tendent, Defendants, Third Party
Complainants and Appellants,

v.

Jason Sims, Third Party Defendant
and Appellee.

No. 21732.

Supreme Court of South Dakota.

Argued May 31, 2001.

Decided Aug. 8, 2001.

Daniel E. Ashmore, Jennifer K. Trucano of Gunderson, Palmer, Goodsell and Nelson, Rapid City, SD, Attorneys for appellee Jason Sims.

Thomas E. Brady, Spearfish, SD, Attorney for appellants.

AMUNDSON, Justice.

[¶ 1.] The County of Lawrence (County) appeals the trial court's dismissal of County's third-party complaint pursuant to SDCL 15-6-12(b). We affirm.

## FACTS

[¶ 2.] On June 24, 1999, Chad Hagemann and Jason Sims, co-employees of Alpha Omega Company, were travelling east on Lawrence County road number 664. Sims was driving a company vehicle as Hagemann was a passenger. While crossing a wooden bridge, a plank somehow lodged under the rear axle of the vehicle causing it to roll. Although Sims survived the accident, Hagemann was ejected from the vehicle and suffered fatal injuries. Alpha Omega paid worker's compensation benefits to Hagemann's estate. Hagemann's estate brought a wrongful death action against County for failure to maintain the bridge where the fatal accident occurred.

[¶ 3.] In response to the wrongful death action filed by Hagemann's estate, County filed a third-party complaint against Sims claiming that Sims was negligent in the operation of the vehicle. County claims it would be entitled to contribution or indemnity if it was found liable for the death of Hagemann because Sims was at least partially responsible for the accident. Sims filed a motion to dismiss claiming that SDCL 62-3-2 prevents suit against him. The trial court agreed with Sims and granted his motion to dismiss pursuant to SDCL 15-6-12(b)(5).[1] County appeals raising the following issue:

> Whether SDCL 62-3-2 precludes County from seeking contribution or indemnity from Sims.

## STANDARD OF REVIEW

[¶ 4.] This Court's standard of review of a trial court's grant or denial of a motion to dismiss is the same standard as that which is applied upon review of a motion of summary judgment-"is the pleader entitled to judgment as a matter of law?" *Yankton Ethanol, Inc. v. Vironment, Inc.*, 1999 SD 42, ¶ 6, 592 N.W.2d 596, 597–98 (quoting *Steiner v. County of Marshall*, 1997 SD 109, ¶ 16, 568 N.W.2d 627, 631). Therefore, we review all facts most favorable to the nonmovant party. *Id.* We continue to review questions of law, particularly issues of statutory construction, de novo. *In re Estate of Klauzer*, 2000 SD 7, ¶ 22, 604 N.W.2d 474, 479.

## DECISION

[¶ 5.] The disposition of this case depends on whether under SDCL 62-3-2,

---

1. SDCL 15-6-12(b) provides: Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion:

 . . . .

 (5) Failure to state a claim upon which relief can be granted;

Sims is a joint tortfeasor pursuant to SDCL 15-8-11. "The intent of the statute must be determined from what the legislature said, rather than what this court thinks the legislature should have said, and this determination must be confined to the plain, ordinary meaning of the language used by the legislature." *M.B. v. Konenkamp*, 523 N.W.2d 94, 97 (S.D.1994). The rules of statutory construction adopted by this Court state:

> The purpose of rules regarding the construction of statutes is to discover the true intention of the law, and said intention is to be ascertained by the court primarily from the language expressed in the statute. In applying legislative enactments, we must accept them as written. The legislative intent is determined from what the legislature said, rather than from what we or others think it should have said.

> While it is fundamental that we must strive to ascertain the real intention of the lawmakers, it is equally fundamental that we must confine ourselves to the intention as expressed in the language used. To violate the rule against supplying omitted language would be to add voluntarily unlimited hazard to the already inexact and uncertain business of searching for legislative intent.

> One of the primary rules of statutory ... construction is to give words and phrases their plain meaning and effect. This court assumes that statutes mean what they say and that legislators have said what they meant. When the language of a statute is clear, certain and unambiguous, there is no occasion for construction, and the court's only function is to declare the meaning of the statute as clearly expressed in the statute.

*South Dakota Subsequent Injury Fund v. Casualty Reciprocal Exchange*, 1999 SD 2, ¶ 17, 589 NW2d 206, 209 (quoting *In re Famous Brands, Inc.*, 347 N.W.2d 882, 884–85 (S.D.1984)). SDCL 62-3-2 provides:

> The rights and remedies herein granted to an employee subject to this title, on account of personal injury or death arising out of and in the course of employment, shall exclude all other rights and remedies of such employee, his personal representatives, dependents, or next of kin, on account of such injury or death against his employer *or any employee,* partner, officer or director of such employer, except rights and remedies arising from intentional tort.

SDCL 62-3-2 makes it clear that employer and employee are in the same position when it comes to barring suit against them. To allow such an action for contribution to proceed would circumvent the plain language of SDCL 62-3-2, which prevents suit against "any employee."[2]

[¶ 6.] Being that SDCL 62-3-2 provides "any employee" immunity from suit, contribution against Sims under the Uniform Contribution Among Tortfeasors Act is also barred. As a matter of law, Sims is not a joint tortfeasor. Under the Act, codified in SDCL ch 15-8, a "joint tortfeasor" is defined as "two or more persons jointly or severally *liable* in tort for the same injury to person or property, whether or not judgment has been recovered against all or some of them." SDCL 15-8-11 (emphasis supplied). As this Court stated in *Burmeister v. Youngstrom*, 81 S.D. 578, 139 N.W.2d 226, 231 (1965), the Act only applies "where there is a common *liability* to an injured person in tort" and "there can be no contribution where the injured person has no right of action

2. It is uncontroverted that (1) Sims and Hagemann were co-employees, and (2) Sims and

Hagemann were both acting in the scope of their employment at the time of the accident.

against the third-party defendant." (emphasis supplied). This Court made it "abundantly clear" that contribution only arises when "there is joint or several *liability* rather than the presence of joint or concurring negligence." *Id.*(emphasis supplied). SDCL 62-3-2 immunizes Sims from suit, and, as such, he cannot be held liable as a joint tortfeasor no matter his degree or percentage of negligence. As stated in Larson's: *Workers Compensation Law,* § 121.02:

> The great majority of jurisdictions have held that the employer [or co-employee] whose negligence contributed to the employee's injury cannot be sued or joined as a joint tortfeasor, whether under contribution statutes or at common law. The ground is a simple one: the employer [or co-employee] is not jointly liable to the employee in tort; therefore it cannot be a joint tortfeasor. The liability that rests

upon the employer [or co-employee] is an absolute liability irrespective of negligence, and this is the only kind of liability that can devolve upon it whether it is negligent or not.[3]

As Sims cannot be held liable under SDCL 62-3-2, by definition, he cannot be a joint tortfeasor under SDCL ch 15-8, the Uniform Contribution Among Tortfeasors Act.[4]

[¶ 7.] Rather than arguing the interpretation of SDCL 62-3-2, County urges this Court to disregard South Dakota statutory and case law, and invites us to follow Illinois and Minnesota case law to reach its desired result. County contends that the cases of *Kotecki v. Cyclops Welding Corp.,* 146 Ill.2d 155, 166 Ill.Dec. 1, 585 N.E.2d 1023 (1991) and *Lambertson v. Cincinnati Welding Corp.,* 312 Minn. 114, 257 N.W.2d 679 (1977) as precedent to follow in this case.[5] In essence, the *Kotecki* case and the

---

3. For example, in *Phillips v. Union Pacific R.R. Co.,* 614 P.2d 153 (Utah 1980), a case involving a decedent's estate suing a co-employee for contribution arising out of a car accident, the Utah Supreme Court followed the majority rule against contribution. The court explained:

> There can be no contribution between the defendant railroad and Hammary [employer] and Parham [co-employee], because they cannot be joint tortfeasors. See 2A Larson on Workmen's Comp. 295, Sec. 76.20 Contribution. Their respective liabilities are grounded upon different social issues sought to be recognized by the Legislature when it adopted legislation dealing with Workmen's Compensation. Our statute defines a joint tort-feasor as one of two or more persons jointly or severally liable in tort for the same injury. The liability of the employer is not tort liability at all, but only requires that the injured employee be in the course and scope of the employment. *Further, to allow contribution would only permit indirectly that which cannot be done directly, i. e., effectively permitting recovery by one employee against a fellow employee.* The exclusive remedy provisions of both the Utah and the North Carolina Workmen's

Compensation Acts, along with the cases interpreting those provisions, make it clear that an employer's only liability for injuries sustained by an employee is the extent of benefits under the Act. *Additional exposure through the indirect method of a third-party action would be a blatant violation of expressed legislative policy.*

*Phillips,* 614 P.2d at 154 (emphasis added); *see also Weller v. Brown,* 266 Ga. 130, 464 S.E.2d 805 (1996).

4. It is important to note that the Uniform Contribution Among Tortfeasors Act was adopted after the codification of SDCL 62-3-2. Certainly, the Legislature was aware of SDCL 62-3-2 when it adopted the Act. This Court is mindful of the notion that this Court should be hesitant to interpret the effect of a legislative enactment as to void another enactment *sub silentio.* This Court has consistently stated that statutes are to be read *in pari materia,* interpreting multiple statutes "consistently and harmoniously with each other." *Konenkamp,* 523 N.W.2d at 97. If the Legislature desired to limit the application and effect of SDCL 62-3-2, it certainly knows how to do so.

5. County also cites to a few Washington state cases to also support its position that it should

*Lambertson* case hold that an *employer* could be held liable for contribution, but that the amount contributed would be limited to workers' compensation benefits. 166 Ill.Dec. 1, 585 N.E.2d at 1027; 257 N.W.2d at 689. Therefore, by analogy, County contends that Sims, as an employee, should also be held liable for his proportionate share depending on his percentage of fault.[6]

 [¶ 8.] Not only are the cases cited by County not binding on this Court, their principle holding contravenes the plain language of SDCL 62-3-2 and our holding in *Abraham.* In *Abraham,* this Court stated:

> Our interpretation of [SDCL 62-3-2], in accordance with previous decisions and read together with other statutes, is that SDCL 62-3-2 does operate as an exclusionary provision which prevents claims against fellow employees for injuries obtained in the scope of employment[.]

1999 SD 90, ¶ 22, 598 N.W.2d 512, 518. SDCL 62-3-2 unambiguously provides that an employee cannot maintain a negligence action against his employer or co-employee as workers' compensation is the exclusive remedy for a work-related injury.[7] To fol-

---

be able to go forward against an employer or employee despite having a statute similar to SDCL 62-3-2. The case of *Clark v. Pacific Corp,* 118 Wash.2d 167, 822 P.2d 162 (1991) allowed suit against an employer for contribution. The *Clark* case, however, was subsequently abrogated by state statute. Following the state legislature's change of the statute, the court in *Shelton v. Azar, Inc.,* 90 Wash. App. 923, 954 P.2d 352 (1998) recognized that a suit against an employer could not be maintained because the new statute expressly forbids such action. Therefore, the *Clark* case has little or no prudential value in the state of Washington, let alone South Dakota. It is also instructive to note that Illinois has only partially adopted the Uniform Contribution Among Tortfeasor Act. In Illinois, the Act includes an express provision for third party recovery against an employer. *See* Ill.St. ch 740, § 100/3.5. Minnesota has not adopted the Act. *But see Minn.Ann.St. 604.01, subd. 1.* As the *Lambertson* court states, "other jurisdictions must be read with caution on this issue because of different statutes and concepts of recovery." 257 N.W.2d at 689. It is clear that South Dakota's statutory scheme for recovery is different from those cited by County. The dissent disregards our holding in *Burmeister,* and now attempts to interpret SDCL 15-8-11 to hold that negligence alone creates a joint tortfeasor. This interpretation not only contravenes the plain language of SDCL 15-8-11 requiring "common liability," but also our holding in *Burmeister.*

6. In its brief, County concedes that Hagemann's estate could not sue Sims directly be-

cause the language of SDCL 62-3-2 bars such action. *See Canal Insurance Co. v. Abraham,* 1999 SD 90, 598 N.W.2d 512. The holding in *Abraham* contradicts the holdings espoused in the two cases supplied as persuasive authority by County.

7. The dissent cites no authority for the propositions that our "use" of "SDCL 62-3-2 to define the rights of a third party in a context in which it was never meant apply" and that its decision calls "for a commonsense interpretation of these separate, independent chapters." The language employed by the Legislature in writing SDCL 62-3-2 is plain and unambiguous. Therefore, any interpretation is unnecessary, and we must simply "declare the meaning of the statute as clearly expressed." *VanGorp v. Sieff,* 2001 SD 45, ¶ 12, 624 N.W.2d 712. As stated by Chief Justice Miller in his dissent in *Baatz v. Arrow Bar,* 426 N.W.2d 298, 309 (S.D.1988), this Court "should not speculate or second guess the legislature in its exercise of this constitutional prerogative." This Court cannot supplant its own agenda for that of the Legislature. To reach the result desired by the dissent this Court would have to overrule *Burmeister* and rewrite SDCL 15-8-11 and 62-3-2. "It is not the task of this court to revise or amend statutes, or to 'liberally construe a statute to avoid a seemingly harsh result where such action would do violence to the plain meaning of the statute under construction.'" *Moore v. Michelin Tire Co.,* 1999 SD 152, ¶ 21, 603 N.W.2d 513, 519. If the result appears to be harsh or unfair, the Legislature is the proper venue to amend the statutes, not the courts.

low the Illinois and Minnesota case law in this area would involve rewriting South Dakota's workers compensation law by this Court.[8] We decline the invitation to legislate in this case.[9] Since SDCL 62-3-2 bars County's action against Sims, it was proper for the trial court to dismiss this case as provided by SDCL 15-6-12(b)(5).

[¶ 9.] We affirm.

[¶ 10.] KONENKAMP, Justice, concurs.

[¶ 11.] GILBERTSON, Justice, concurs in result.

[¶ 12.] MILLER, Chief Justice, and SABERS, Justice, dissent.

GILBERTSON, Justice (concurring in result).

[¶ 13.] The subject we are faced with was first addressed by the South Dakota Legislature in chapter 376, section 5 of the 1917 Session laws. It provided:

The rights and remedies herein granted to an employee subject to this act on account of personal injury or death by accident arising out of and in the course of employment, shall exclude all other rights and remedies of such employee, his personal representatives, dependents or next of kin, on account of such injury or death.

Thus, at that time, an employee who was injured or killed on the job was precluded from suing anybody and everybody. The ban was all-inclusive in exchange for workers' compensation benefits.

[¶ 14.] Through chapter 422 of the 1977 Session Laws and chapter 370, section 2 of the 1978 Session Laws, the Legislature limited the scope of this ban. SDCL 62-3-2 now states:

The rights and remedies herein granted *to an employee* subject to this title, on account of personal injury or death arising out of and in the course of employment, shall exclude all other rights and remedies of *such employee, his personal representatives,* dependents, or next of kin on account of such injury or death **against** *his employer or any employee, partner, officer or director of such employer,* except rights and remedies arising from intentional tort. (emphasis added).

Thus, the amendments limited the scope of the prohibition against suit by the employee to claims against "his employer or any employee, partner, officer of director of such employer...." Clearly this prohibition does not apply to suits initiated by party defendants such as Lawrence County, and I disagree with the majority opinion's conclusion to the contrary.

[¶ 15.] Disposition of this issue instead rests upon an examination of the individual claims. County claims a right contribution under the Uniform Contribution Among Tortfeasors Act, arguing Simms is a "joint tortfeasor" under the Act. As the majority opinion points out, Simms cannot be a joint tortfeasor because he is not liable in tort for the injury to Hagemann. This conclusion is in line with the vast majority of jurisdictions, and is based on a plain reading of the clear language of SDCL 15-8-11. In addition, a claim for contribution is intimately tied to, and "on account of personal injury or death." SDCL 62-3-2. For those reasons, County's claim for contribu-

---

8. Even the Illinois court recognizes that 45 other jurisdictions follow the majority rule that an employer cannot be sued for contribution when there is a state statute which expressly forbids such action. *See Kotecki,* 166 Ill.Dec. 1, 585 N.E.2d at 1027.

9. County also urges this Court to contemplate public policy considerations, namely the equitable principle of not allowing Sims, a potential tortfeasor, protection against suit. Again, the legislature is best suited to make policy decisions.

tion falls within the exclusivity provision of SDCL 62-3-2, and cannot stand.

[¶ 16.] A claim for indemnity, however, is not "on account of personal injury or death." *Id.* Indemnity is a separate cause of action that arises "independent of the underlying liability." *Weiszhaar Farms, Inc. v. Tobin,* 522 N.W.2d 484, 492 (S.D. 1994). Indemnity is an equitable remedy by which the burden of loss is entirely shifted from one party onto another. *Mark, Inc. v. Maguire Insurance Agency, Inc.,* 518 N.W.2d 227, 230 (S.D.1994). South Dakota law allows a claim for indemnity to proceed in the following circumstances: (1) derivative or vicarious liability; (2) action at direction of, and for, another; (3) breach of duty to indemnify; (4) failure to discover negligence of another; and (5) express contract. *Id.* Indemnity can arise through contractual agreement or based on a legal relationship, such as that between bailee and bailor or between a principal and her agent. Professor Larson notes in his treatise that as a general rule, "[t]he third party may recover-over against the employer [or employee] whenever it can be said that the employer [or employee] breached an independent duty toward the third party and thus acquired an obligation to indemnify the third party." *Larson's Workers' Compensation Law,* § 121.04 at 121-47. Because a claim for indemnity is an independent cause of action, which does not arise "on account of personal injury or death," it should not be dismissed out of hand based on the exclusivity provision of SDCL 62-3-2. *See id.* Rather, it should be allowed to proceed, but only if the employer or employee owes an independent duty to the third party.

[¶ 17.] The question for this Court then becomes whether Simms owed an independent duty to County. Simms owes no contractual duty to indemnify County. Nor does the relationship between Simms and County create such a legal duty. There-fore, because Simms owes no duty to indemnify County, the circuit court was correct in dismissing County's third party complaint against Simms.

[¶ 18.] For the above reasons, I concur in result.

SABERS, Justice (dissenting).

[¶ 19.] The majority opinion fails to read SDCL 62-3-2 in its proper light. The position taken by other courts in addressing this issue and allowing contribution and indemnity best demonstrates the error:

> The phrase most frequently heard in arguments against recovery over by the third party against the employer is this: the allowance of such recovery over accomplishes indirectly what cannot be done directly and, therefore, evades the spirit of the legislation. This is not entirely accurate, for it does not tell the whole story. True, the end result is that a common-law size recovery proceeds from the employer to the employee. In the process, however, two things are accomplished, one of which is relevant to the purposes of the compensation provision and the other of which is independent of it. The relevant accomplishment is that of preserving the employee's common-law rights against negligent outsiders. This having been done, there still remains the job of adjusting rights fairly between the outsider and the negligent employer. The question here becomes very precise: did the compensation acts, in conferring immunity on the employer from common-law suits, mean to do so only at the expense of the injured employee, or also at the expense of outsiders? One answer is that whereas the injured employee got *quid pro quo* in receiving assured compensation payments as a substitute for tort recoveries, the third party has received absolutely nothing and, hence, should not be impliedly held to have given up rights which he had before.

[¶ 20.] *Lambertson v. Cincinnati Welding Corp.*, 312 Minn. 114, 257 N.W.2d 679, 688–89 (1977) (quoting Larson, Workmen's Compensation: Third Party's Action Over Against Employer, 65 NWU.L.Rev. 351, 419).[10] As Larson recognizes in his treatise on worker's compensation, "[e]ach side to the controversy has an argument in its favor which, considered alone, sounds irresistible." Larson, Worker's Compensation: Third Party Actions, § 121.01 at 121-4. The employer asserts the exclusivity provision, whereas the third party may be "subject to a staggering liability it would not have had to bear but for the sheer chance that the other parties involved happened to be under a compensation act." Id. Yet, other courts have found a way to balance the interests and achieve a fair allocation, unfortunately the majority opinion has not.

[¶ 21.] The majority opinion uses SDCL 62-3-2 to define the rights of a third party in a context in which it was never meant to apply. As recognized by the court in *Lambertson*, "[a] situation like this ought to be dealt with legislatively. It is rather inconsiderate to force courts to speculate about legislative intention on the strength of statutory language, in the framing of which the draftsmen had not the remotest trace of the present question in their minds." *Lambertson*, 257 N.W.2d at 689. Despite the majority opinion's stated declaration that "[w]e decline the invitation to legislate in this case," that is exactly what it is doing.

[¶ 22.] Interpreting South Dakota law on claims for indemnity, the United States District Court for South Dakota held that "an indemnity claim may properly be raised by a third party against an employer discharged from direct liability to his injured employee." *Harn v. Standard Engr. Co.*, 416 F.Supp. 1168, 1169 (D.S.D.

1976). In so holding, the court recognized that:

> The reasoning behind the foregoing cases is that an indemnity claim is not derivative of the employee's claim. Rather, indemnity is based on a set of facts warranting a conclusion that the indemnitor owes a distinct obligation or duty to the indemnitee. This obligation exists separate and apart from any liability which the employer as indemnitor might have had to his injured employee.

*Id.* at 1170. As SDCL 62-3-2 treats employers and employees equally, the foregoing reasoning is equally applicable to a third party recovery against Simms as a co-employee, even if recovery is ultimately obtained or offset against Alpha Omega as the employer.

[¶ 23.] The majority opinion attempts to utilize the definition of "liability" to defeat any attempt at contribution or indemnity. In so doing, the majority opinion relies on Burmeister v. Youngstrom, a guest statute case which indicated that when there is no *joint liability* there is no contribution. 81 S.D. 578, 139 N.W.2d 226, 231. The Minnesota court in *Lambertson* rejected this reasoning and overruled their prior cases indicating there was no recovery because there was no "common liability." *Lambertson*, 257 N.W.2d at 688. We should do the same. The definition of liability or joint liability has many connotations, of which one certainly has to be responsibility for wrongs. SDCL 20-9-1.

> While there is no common liability to the employee in tort, both the employer and the third party are nonetheless liable to the employee for his injuries; the employer through the fixed no-fault workers' compensation system and the third party through the variable recovery available in common law tort action.

---

10. Although this authority is not binding, we should not follow the majority opinion's attempt to limit the discourse without even considering how other courts have dealt with such a conceptually difficult issue.

Contribution is a flexible, equitable remedy designed to accomplish a fair allocation of loss among parties. Such a remedy should be utilized to achieve fairness on particular facts, unfettered by outworn technical concepts like common liability.

*Lambertson*, 257 N.W.2d at 688.

[¶ 24.] In recognizing the need to create a "fair allocation of loss" the *Lambertson* court limited the right of contribution and indemnity by a third party against the employer/employee to the total worker's compensation exposure. *Id.* at 689. Other courts have done the same, the effect of which is to preserve the compensation act, yet not to force third party's to bear the brunt of a loss for which they are not responsible. "No doubt, if open-ended contribution over against employer was permitted the social and economic policies underlying the compensation scheme would be subverted." Larson, *Worker's Compensation: Third Party Actions*, § 121.03 at 121-27. In effect, the limitation of exposure, espoused by the *Lambertson* court and embraced in other jurisdictions, would require at most that the employer pay the maximum under worker's compensation and the third party pay the amount over and above the worker's compensation maximum for which it is liable, after taking into account any contributory negligence. Through this apportionment, the third party avoids overexposure and the employer is limited to its rightful exposure. *Id.* at 121-30, 31 (discussing the Minnesota rule and the reduction of compensation from third party recovery).[11]

[¶ 25.] The majority opinion result is inequitable and totally unfair both now and for the indefinite future. For example, Simms was allowed to intervene in this action as a plaintiff against County. Certainly, his own negligence will be used to offset any recovery he may seek from County. Yet, remarkably, the majority opinion expects the taxpayers of the County to absorb his negligence as it relates to the death of Hagemann. This would be totally inconsistent and unfair. A common-sense interpretation would correctly place the worker's compensation statutes in the worker's compensation context and place the joint tortfeasor statutes in the joint tortfeasor context. I vote for a common-sense interpretation of these separate, independent chapters.

[¶ 26.] Therefore, I dissent.

[¶ 26.] Miller, C.J., joins this dissent.

---

11. The concurrence fails to appreciate the fact that this is not a typical indemnity claim. Because the maximum worker's compensation exposure has been paid, there will not be any recovery by County against either the employer or the negligent employee, but instead a jury would be allowed to factor in this outside negligence to calculate County's negligence, if any. We are not using indemnity as a separate cause of action but an equitable means to accomplish a fair allocation. Therefore, the independent duty analysis is not only inapplicable but unfair as it permits a windfall.